Okay, I think they're set up. Morning, Your Honors. May it please the court. Thank you for going forward with argument today. My name is Jeremy Friedman, and I represent the relator Ray Perry, who's in the courtroom today. I'm going to try and reserve four minutes for rebuttal. Ms. Morris, the clock didn't start yet. Now it started. Okay. Although this case has an unusual history in its current posture, it presents an opportunity to clarify and reaffirm the Ninth Circuit position within the emerging consensus of the sister circuits. As explained in the Chorch's case from the Second Circuit, which fell fairly recently, and the Prather case from the Sixth Circuit, the relators do not have to have personal knowledge of the billing information of the claim submissions in order to state the circumstances of the fraud. Do they have to be insiders? They don't have to be insiders. There's no statutory requirement of an insider. They do have to be able to plead facts sufficient to satisfy the twin purposes of the Rule 9b, which is to give notice to the defendants of what the claims are and to make sure that these aren't strike suits and fishing expeditions. Now, the Ninth Circuit in the past, and EBID, I'm not too sure how to pronounce it, and United Healthcare, both address the more nuanced and relaxed view of the 9b provision. But both of them are affirming, they affirm the dismissal and then they grant, they require on remand that they give leave to amend, which is similar to what happened in our case here in Perry 1. And there are other Ninth Circuit decisions that say you can't hold the pleading information and belief against the relator and you can't knock out a case just because they allege some, the relator alleges some facts on information and belief are Vatan and Tamahana. Those are both Ninth Circuit cases, but they're both unpublished and non-presidential. So this case... Any way that someone in your client's position could get his hands on the bills short of discovery once you get past 12b-6? There might be, although it's unnecessary in this case, because... Well, you know, let me stay on the anyway, because I'm trying to figure out, I mean, Rule 9 requires, of course, greater particularity on the pleading. We get that because it's fraud. But it doesn't say anything about, okay, it has to be this, it has to be this, it has to be this, it has to, it's a sort of a particularity requirement of who, why, and so on. And I'm trying to figure out whether a requirement that the actual bill be part of the allegation and the complaint is necessary and under what circumstances, what kinds of fraud the actual bill might simply not be available. Yeah, okay. But obviously, your client does not have the actual bills. Well, they have, they don't have the invoices themselves, but he does have significant information that is pleaded about contract adjustments, contract increases, things like that. So I think... But what makes that false? You know, the False Claim Act requires evidence of a false or fraudulent claim for payment or approval. And I just didn't see anything in your complaint. If you've got something, I'd love to see it. And I'm going to ask you to give me what you think is maybe the strongest contract you've got, the best contract you've got. Because you've been very frank in paragraph 47 of admitting you don't have this information. Well, the only thing we state in 47, and it's been the same from the beginning, is that we didn't have the billing information, but it didn't stop us from pleading the particulars. But isn't that the essence of the false claim? A false claim for payment? Not in this case, Your Honor. And one of maybe the best approach to this would be to state that the Escobar decision talks about how materiality of the false claim can be proven by... Not by the bill itself. The bill is simply just a statement of the work. It's that the bill represents... There's a material falsity that is made clear by the fact that they didn't adhere to the regulations. So in this case, it's a perfect example. Mr. Perry saw the fraud. He saw... He saw part of the fraud. That is to say, picking allegations of the complaint is true. He saw the shoddy work, and he saw a whole lot of it. Right. That's part of the fraud. And the bills themselves are just simply stating a claim for the work. So there's nothing in the bills that we need to see in order to understand the falsity. The falsity has... But don't we have to have some evidence that officials who were accepting this work, which was not Perry's job, accepted the work under circumstances that suggest they didn't realize that it was shoddy, and that they were paying... That they were making full payment, that there were no adjustments, or that the officials were saying, look, I know what quality control is telling us. It's supposed to be within this range. You're just off of that. And I never thought that range was particularly relevant anyway. So I'll take the highway the way you gave it to us. I think it's just fine. Let's go forward. That's not fraud. That's not a false claim. There's a false claim if you're submitting a claim for payment, and you know that you don't qualify for that payment. Now, the question of adjustments is a separate question. I'd like to address that directly, if I could. There are three points, and I think we tried to address it in the briefs and in the last argument. But I think with the onset of the Escobar decision, it helps us. The first point is that these allegations do not lend themselves to adjustments. You cannot adjust for failed verification tests, for falsely reporting passing results, for cherry picking locations, for paving over failing materials, for claiming cost increases despite failures. These are The types of things that went on here are not the kinds of things that you can have adjustments. And I think it would be very helpful to point out that in paragraph 19 of the complaint, and this was not so emphasized in the briefing, it's on page 310 of the excerpts of record. If you want federal funds, you have to meet these federal regulations and specifications. You have to design according to safety and durability. You have to maintain your records. You have to report the You have to, they're given warnings, no false statements about the quality of materials, or it's a crime. You have to participate in quality assurance, and the ODOT has to submit a certificate of compliance. So those are the kinds of things that you can't adjust around. If you have an ODOT manager who's simply allowing these things to happen, then they're not adhering to what the federal regulations require. But a second point about the adjustment. Let me pause right there and make sure I pick up the point. I'm reading paragraph 18 and 19 together. This is on ER 310. Paragraph 18 says, by statute or mandate, Secretary of DOT must ensure that it's constructed in accordance with criteria, and then you lay that out. And are we supposed to infer from that, because the highway is allowed to go and somehow false representation, because the allegations are that the work wasn't done in accordance with these standards. On the other hand, it's also clear that there's no correction done physically to the work. Is that the argument? That's part of the argument, yes. There was no physical corrections to the work, and they lied about it. They lied about what they did or didn't do. Now, when you say they lied about it, what allegations in here tell us that they lied about it? There are lots of allegations that you didn't do the work properly. What are the allegations that they lied about it? I want to go back to what I said, Matt, to Judge Fletcher's request. Give me your best case. What's your rock-solid allegation? I had this at the last argument, and I had a hard time answering it. I'm going to answer it directly here, but it's sort of like a Sophie's choice. All of these allegations are sufficient. Just pick one, then. If you want to pick one at random, that's fine, because they're all equally good. How about paragraph 130? That's my vote. Okay. Let's go with 130. Okay. 130 is where they claimed just under $10 million of work. That's the claim for payment. It names the project manager that we knew at the time. Wait a minute. Maybe I'm not in the right place. That's 129, so this is all part of the same contract. Okay. Am I on the right page? ER 345? The defendant knew that it had provided substandard material. Then they knew or should have known about the non-compliant materials, yet requested payment, including bonuses. They agreed with the project manager to falsify the compliance documents. So the falsification of the compliance documents is the lie. It's not just that they didn't do the work. You haven't identified who's representing the defendant and who's the project manager. I'm not sure whether you have to, but it feels like this would be a good point to put in some additional detail. Well, we did identify the project manager as Rob Peters. We don't have the specific identity of the employee, I believe, in this case, but any time we did have the identity of the individual employee within the defendant. Although there's plenty of case law that we cited that says you don't have to identify the individuals, this is a Rule 9B, it's the beginning of pleadings. All we really need to do is put them on notice, make them sure that they know which contracts to pull and what's out there. Anyways, they had a failing test report showing 90%, and yet they filed papers that said that they didn't. They also falsely and fraudulently used a nuclear moisture density gauge. So they have these gauges that they need to be able to use, and they were not in compliance with the calibration. They knew that it was miscalibrated. It was miscalibrated to show passing tests. This isn't just we didn't construct it correctly. And then if you turn to paragraph 132, there it gives specific details of the QV information, the quality verifications that we had. And if I could return back to this question of adjustments. The adjustments go to damages. They don't go to false claims. If you're making a false claim and you have a voucher or an invoice to the government that says, pay me, I did this work, and there's a facial lie on it, and the government sees the facial lie and says, I'm not going to pay you all of that. We're going to pay you less because you're lying. The reduced payment doesn't obviate the liability for the false claim. In other words, it's a false claim. It's not a false paid statute. And under the False Claims Act, you can make a false claim for money, get denied any payment, and you've still violated the law, and the relator would still be entitled to recover penalties on behalf of the government. And third of all, the third point I want to make about these adjustments I think is very helpful, that we can say today that we couldn't say at the last argument, and that it really, the issue that we're all grappling with has to do with materiality. If, in fact, the government knew about all of this problem, all of these problems, and they even say they even knew about the fraudulent, the cherry picking or the false documentation, and they made adjustments that they, and they paid the contracts anyways, that that is not material. I think that's what this whole issue is. Were there adjustments made because the government knew about all of these problems and made payments? In the words of Escobar, it's not a false statement of compliance with the material regulation. But that assumes we have the mine run of cases. You're talking about the mine run of cases. Our project manager is going to deny these fees, I mean, deny payment. And that assumes that the ODOT managers are being reasonable and acting lawfully, and that's not something we can assume in this case. But it's even more important. These allegations make it clear that the defendant never made a complete disclosure to the government. So if the government made adjustments or didn't make adjustments, it's completely irrelevant. And that's what the Prather case says. Now, you're coming up to two minutes left. Do you want to save some time? Yes, I would. Okay. Thank you, Your Honor. Good morning. Michael Peterkin for Hooker Creek. I'll be arguing for the first eight minutes, and then Robin Stein will address the Court and ask if there will be any questions that the Court has for her particular client. And then if not, she will defer her time to Mr. Stewart, who will argue for Knife River. So you're arguing eight minutes, seven minutes? Eight minutes.  Okay. Thank you. Go. Materiality is measured by the contract and ODOT's conduct in this case. In Escobar, the Court asked whether a defendant knowingly violated a contract regulation that the defendant knew was material to the government's payment decision. Those facts aren't present here. Let me explain why there is not shoddy work, Your Honor, in these highway cases. Well, the allegations as to shoddy work are explicit and detailed. They may not be right, but they're in the complaint. And for present purposes, I take them as true. You should take them as true, and they still don't show shoddy work. Here's why. Yeah, that's going to be uphill work for you because it certainly says to me that it's shoddy work. Okay. Give it a try. Well, and it was your question in the former oral argument in this case as well. You questioned that. Here's why, and this is really important for the Court to understand. One quality test is not material. And what Perry does is he picks out quality verification tests. Those are tests done not by any contractor. Those are the tests performed by ODOT. And one test is not material because the contract specifications. Can I interrupt for just a minute? I'm reading paragraph 131 just as an example. Paragraph 131 says, in 2005-2006, defendant through its QCT. What's a QCT? Quality Control Technician. Okay. Defendant falsely and fraudulently used a nuclear moisture density gauge owned by defendant that was not in compliance. You just told me the tests were done by ODOT. This says this test was done by defendant. So I'm talking about the 10 projects that Hooker Creek performed. And when you look at those 10 projects, you will see quality verifications. You will not see any quality control tests in those, not specifically. So let me explain why this is important. Under the specifications on density, compaction, and mixed design verification, you must have a series of either four or five tests. And so you look at the running average of either four or five tests. And only the running average is material. If you take one test, that just shows a temporary noncompliance. Why? Why is it set up this way? Because the contractor is using native material, crushed rock. And crushed rock does not come out of the ground in a uniform way. So when you take the crushed rock and you mix it with oil and other ingredients and you make the asphalt, you have to do a job formula test. That test is shown at SER 65, for example. That's a gyratory worksheet. A voids worksheet gyratory is the exact name of the document. Now, in that document, it does the testing. It shows the testing. And if it is out of conformance, then they will adjust their formula. So one test is not relevant. It's not material to ODOT. And you know what's here is ODOT performance. What Mr. Perry is objecting to is ODOT's testing, not CIT, which is Carlson testing for Hooker Creek. Now, I understand the argument. This argument doesn't so much go to particularity as to go to sufficiency. As to the particularity issue, what's your response to the or your approach to this question as to whether or not billing records are required? I think first you have to look at false and falsity before you get to the billing records. But let me answer your question directly. Under the broad discretion that ODOT as the owner of the project has, it's not about damages, as counsel just said. It is about ODOT knowing, doing their own testing, knowing about it, comparing it with the quality control testing done by an independent subcontractor of Hooker Creek, subcontractors at SER 72. And the contractor for Hooker Creek, you look and balance those two, and they make a payment decision. But before they make a payment decision, they could do a deductive change order. They could adjust the specifications because the rock coming out of the ground isn't producing the asphalt with the job formula that is spec'd. I mean, this is not a white room case like a pharmaceutical case where you have an allegation that you produced a pharmaceutical in China like in the Campy case. No, this is where the contractors are out there in weather, native material, doing a very good job. And these simple quality verification tests, and sometimes, by the way, that he refers to three tests. I mean, if you look through the first ten projects, there are times when he gets close, but he never talks about the running average. My point is this. There is no factual falsity. There is no legal falsity. And ODOT knew exactly what they were doing when they made payment decisions. And respectfully, Your Honor, there wasn't shoddy work. And the ‑‑ if you take the allegations as true ‑‑ I'm just looking at the complaint. I have no idea as to the truthfulness of the complaint. No, we take it as true, but the specifications, as I've explained in the brief, don't support that. Thank you. Thank you. Good morning. May it please the Court. Robin Stein on behalf of Oregon Mainline and JC Compton. Unless you have questions specific to the allegations as they relate to my particular clients, I'd like to yield my time for two minutes. I have a question. I am anxious to get to Mr. Stewart because he represents Knife River, which is where we focus some things. Do you agree with Mr. Peterkin that the contracts all called for a running average, some of which would be done by ODOT, some of which might be verified by an outside contractor? I actually can't speak to that. I think that the issue in this case is that the allegations against the particular defendants, even as pleaded, aren't particular enough. And I can give an example of that. For example, in paragraph 114 of the third amended complaint, it says that JC Compton determined to perform only 24 tests despite knowing specifications required 53 tests. These are the types of allegations. The problem is that it doesn't say that only 24 tests were performed. It admits that they don't know how many tests were performed and that, in fact, the only person who would know or the only records would be in the exclusive possession of, for example, JC Compton. That doesn't also get to the fact that, of course, those documents may be in the possession of ODOT. Okay. Thank you. Good morning. If it pleases the Court, my name is John Spencer Stewart. I represent Knife River and Hap Taylor and so forth. Seems to me that we ought to start at a little different place. I am starting with an order and memorandum which was filed with this Court not for publication on March 27, 2014. That's the genesis of permitting this realtor to replead in March of 2014. And basically, let me say this about that. I started practicing law in front of Judge Solomon, and he never gave any of us the kind of leeway that we all thought we should have gotten. And I very much applaud this Court and you particularly, Judge Fletcher, in saying let's give the person another shot at pleading this situation. And they did, and you did, and he did. It's no different. There is absolutely no difference between the complaint that we're talking about now and the complaint that you said, well, let's give him another chance. Nor is there any difference... My objection to the prior complaint, if you'll recall, is not that the allegations with each project were necessarily deficient, but rather that the projects were used as an example of an overarching scheme. And my complaint was that the overarching scheme was not, or the pattern was not sufficiently pled, but my view was that as to individual projects, those might have been sufficient. And we do have changes. I've compared the Second Amendment complaint that was at issue there and the Third Amendment complaint there. We've got a lot more detail than we'd had the first time around for the Second Amendment complaint now and the third. Let me address your first question first and then your comments second. There's nothing in the current complaint that discusses any overarching scheme... That's right. That makes it better. ...at all. Yep, that makes it better. Now, if you look at the examples, they still do not have who, when, why... Maybe turn to the one that was raised by Judge Watford. Okay. That's the Glacier Highland couplet project. Right. Okay. And that's, I think, paragraph 131. Yeah. Anybody that worked at ODOT for the period of time Mr. Perry worked at ODOT could allege exactly what's in 131. It doesn't... Start with 130, and then you can go to 131. Okay. It starts off with defendant knew or should have known of the noncompliant materials provided in the project and yet expected payment. There's no indication. Again, we go back to Rule 8 and Rule 9 with respect to the particularity that you have to allege. There's no identification of anybody or anything. It's general allegations with lots of adjectives. Just keep reading. I mean, it's nice to stop after the first sentence. But the reason I pick this one as maybe his best example is simply that there is a specific allegation of a false statement made. And in addition, it's coupled with at least an implicit allegation of materiality because it says, as a result of the false statement that was made, the contractor received a bonus of whatever it is, $16,000. So what's missing from at least that little snippet? I grant you that's a much larger complaint. But what's missing from that set of allegations? Who, why, when, versus present, et cetera. The project manager is identified in the prior paragraph, in paragraph 129. I understand. So who's okay? What else do we need? When? Why? What did the government do? Well, with the government paid, we know that. We don't know how much they paid, but we know they paid. We know that they originally sued the government and they dismissed that case on summary judgment. And there's nothing in here that indicates that the government did not seek to intercede at all. That's how little they think of this complaint. Well, you know, I do a lot of, well, I do. We see a fair number of key TAM complaints. And the fact that the government chooses not to intervene is neither here nor there. I mean, in a sense, there are a lot of good ones in which they intervene and there are a lot of good ones in which they don't intervene. Let me just suggest this. I'm looking at the order that Judge McShane crafted and signed after he reviewed this work product. And basically, he indicated that, in fact, five judges had reviewed this sort of pleading and had found that it was not up to snuff with respect to Rules 8 and 9. Are you counting me as one of the five? Sure. You remanded it, but you indicated that, in fact, because we've. . . I don't think you listened to what I said earlier as to why I remanded. I did. Okay. I understand. So. . . As soon as he takes out the overarching, my objection went away. So I'm looking at what. . . I think we're talking four judges. Okay, fine. And we have three here today. And I guess my point is, if you look at what Judge McShane had to say, a person who was brand new to the job, brand new to this particular case, looks at every single piece of paper, looks at all of the briefs, looks at all of the amendments after this particular complaint was filed, there's 35 requests for extensions of time to add additional stuff to this. We still are in a situation where there is one example of something with perhaps the project manager's name, no other information that would indicate anything other than any of us could file that same kind of a complaint, and somehow we would be able to then ferret into some sort of discovery bonanza of trying to find out whether there was, A, a false billing prepared, which he should have had. You say he should have had. . . He should have had for purposes of pleading, or he should have had for some other reason? Should have had for purposes of pleading. If he's accusing the project manager of being a fraud, he ought to have some evidence. So what we end up having, and I think that it's very apropos to what. . . Does it satisfy the false clayback if he alleges, not that the billing was false in the sense that ODOT knew what the bill was coming, and it's exactly what they agreed upon, but that the project manager and the, excuse me, and your contractor have agreed that the work is all substandard, it doesn't satisfy the contract, but ODOT's going to take it anyway. Wouldn't that satisfy the false claim? I don't think just in the summary in which you said, no, I don't. I think that if you had what Rule 8 and 9 envision, you would have who the project manager was for the owner, ODOT, who the project manager was that made this representation. If there were a bribe offered and accepted by an ODOT project manager, obviously that would be a separate charge. It could be a criminal charge. It could be everything. But for purposes of the False Claims Act, if there were an allegation that a bribe was paid to the manager and the manager okayed the project knowing that it didn't satisfy the contract and they therefore paid full price without an adjustment, would that be sufficient under the False Claims Act? It could be if pled properly with particularity. None of these are. None of them are, including the one in paragraph 131. Where the project manager falsely substituted a passing compaction number. Yeah, no. I mean, anyone can make that allegation. The point is, and I think, Your Honor, my question is as to that, why is that allegation? Of course anyone could make it, but that's not the issue. Is that allegation made with sufficient particularity? No, it's not. Because? Because it simply says this is what happened. It doesn't say when, where, what load. Well, we do have detail in the prior sentence. It says there was a failing test report showing 90%, and it's down to the tenth place. So that's actually pretty specific. He certainly hasn't shown us that particular test. We have no knowledge of that. And I guess my fundamental point here is that as you, Judge Fletcher, indicated at the very beginning, does it matter whether or not the relator is an insider? No. That's everything. That's absolutely everything. I mean, you say as a matter of law, if the person is not an insider, he cannot make these allegations? Not on the basis of this kind of a complaint, no. No. Then my question is different. The reason I ask that question is it may be that the district judge thought, as a precondition for bringing a successful key TAM complaint, that the relator had to be an insider, which I think is wrong. Now, often, and maybe even usually, the relator will be an insider, but I don't think that's a legal requirement. Well, but how do you then, if, and I take with due respect what you just said, how do you handle this, though? He says he has no access to information, records, underlying defendants' bills for work performed and materials provided related to the road construction and maintenance contracts at issue in this lawsuit. He has no evidence of that. He has no knowledge of that. So what we're now doing is what we're saying is we're going to use a key TAM action, false claim, without ever proving a false claim. There's no proof in here of a false claim. And we're going to use it as a discovery device to try to pick out. Well, you see, here's the problem, and it's a tough one. This is not an easy case, I think, and you're helping us show why it's not an easy case. But it's possible that an allegation of a false claim can be made with a great deal of particularity without seeing the bill. And I'll give you an example of it, and it may or may not coincide precisely with the complaint. So I'll give it as an example. It might be in the abstract. We have particularity of allegation of false work. We have an underlying legal structure that says if you forbid shoddy work, we have an underlying legal structure that says you cannot be paid for shoddy work. There's an allegation that a bill was submitted. I didn't see the bill, but we know that it's been paid. There's no dispute that it's been paid. That strikes me as a false claim, even though we don't know the amount for which the claim was made. That is to say, if you cannot make a proper claim if the work is shoddy, unsatisfactory, yet a claim was made and the claim was paid, I don't think I need to know whether the claim was for a million or for 1,000,005. Well, but that assumes, Your Honor, that there's shoddy work. Well, that's correct. For what? And there's no evidence of that in this case. Well, there's an awful lot of allegation of shoddy work. Well, there's allegations of lots of things. But I work 12B-6. What you have to, well, if you simply say that all you need to prove, all you need to allege is shoddy work, then the State of Oregon is at fault, the contractor's at fault, and away we go. No, I don't believe that false claim cases have ever indicated that that is the level of pleading that has to take place. And if you look basically in this case, the history of this case, every single time, including this time, there has been a question about the sufficiency of the allegations. And I read, and I wasn't involved at the time, but I read the order that was signed that remanded this case for another chance. I understand that. And, frankly, by and large, the allegations are no different than they were. You can maybe pick out one here and there, but by and large, in the whole of it, 90%, 95% of it is the same stuff that was there before. Mr. Stewart, I have one last question. Please. I'm going to take this Glacier Highland couple. We're picking on your client only because Judge Watford thought this was a particularly good example. So if in reading the Glacier Highland couplet allegations, I believe that this satisfied Rule 9B, do I reverse the district court entirely, or do I have to go through project by project to decide between you and the other two defendants which ones qualify and which ones don't? I think you do. Okay. If you do this, you have to go by project by project, defendant by defendant. I think you do. I really do. Yeah, I know. Unless you have other questions. Okay. Thank you very much. Thank you for your help. You've got a couple of minutes you've saved. Before you start, do you have an answer to Judge Bybee's last question? Yes. The district court did not go project by project. It ruled as a bright-line rule that it was not an insider. The question that I have is, I think Judge Bybee's question is, let's assume for purposes of argument that we think there is sufficient particularity with the claims made in paragraphs 129, 131. Is that enough to reverse entirely, or do we have to go through each defendant and each project? It's unnecessary in my opinion. I think that the district court ruled as a bright-line rule. This court could reverse on the bright-line rule and remand it back. Even if we just found one example? Well, if there were other examples of other claims that were deficient that the court found deficient, it could point that out. But I don't think that's necessary. What's happened here is that there was a – Can I just say, I mean, I picked out that one project, but that was because I was trying to help you. I think the vast majority of your allegations are completely deficient. So I have the exact same question that Judge Bybee posed. There might be four or five that are like the one that I picked, but the rest of it is definitely not sufficient. So what you're saying that we would just say that, oh, well, we found – as long as we found one, we just send it back, and you get to go forward on the whole complaint? I'm sorry, Judge Watford. I didn't understand that you had thought the others were deficient because I find them all quite – I definitely do not. Just let me be clear. I definitely do not. I was picking that one because I thought that was your best one, but the rest I do not think are sufficient. Well, I went through in the brief where I lay out the specifics of the details of where they made falsities, and on each project we talk about how much was claimed. Basically, the relator working in the field and not in the billing department was able to see all of the stuff that was going on, and we put it in great detail here. There's nothing further that needs to be said for the defendants to be on notice of the claims. There's nothing stopping after these claims go forward for the defendants from coming up with actual defenses. We didn't lie about this. We didn't take an average of that. All of those things can be litigated in the course of the action going forward. Yeah, but the whole purpose of Rule 9 and 12b-6 is to spare the defendant from the considerable expense of discovery and, to state it frankly, the risk that you might turn up something that you don't now know. Your Honor, we're not searching. None of these things are going after projects we don't know. Mr. Perry worked on these projects, saw the work going on, saw the lying going on, saw the falsification of the documents going on, and we know now that these roads have failed. He knew that they were going to fail, or he predicted that they would based upon the work, but we can see what's happened with the conditions of these roads, and we can show from the forensic investigation that it is these very types of things, the failure to do compaction, the failure to do batch tolerances correctly, these are the kinds of things that lead to the premature failures of these roads. And the Ninth Circuit decision in Campy refers to the curate's egg. Surely an egg which is partly bad is entirely unpalatable. In this case, surely these Oregon Highway construction projects by these defendants that we've listed here, they're at their core, at their foundation, are failing, and surely roads in those conditions are entirely unreimbursable. Okay, thank you. Thank you. Thank both sides for arguments. Perry versus Hooker Creek Asphalt and Paving, it all submitted for decision. The next case this morning, United States ex-rel Brunson versus Bechtel and Lambert.
judges: W. Fletcher, Bybee, Watford